Lonn Burrows
Attorney-in-fact
Jackie Burrows
Attorney-in-fact
c/o 12939 South 4400 West
Riverton, Utah 84096
801-560-5392

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

**JUL 2 5 2014**

D. MARK JONES, CLERK
BY_____
　　　　　DEPUTY CLERK

                    )URT FOR THE DISTRICT OF UTAH
                    SALT LAKE CITY

Lonn Burrows, a living man
Jackie Burrows, a living woman
　　　　Affiants/Plaintiffs
Vs
LOANLEADERS OF AMERICA
CORPORATION, a California
Corporation;
OPTION ONE MORTGAGE CO. kna
SAND CANYON CORPORATION, a
California Corporation;
FIRST AMERICAN TITLE OF
UTAH, a Utah Corporation:
WELLS FARGO BANK, N.A., a
Delaware Corporation; Martin
Fogelman, loan officer, a California
resident; OCWEN FINANCIAL
CORPORATION fka HOMEWARD
RESIDENTIAL, INC. fka AMERICAN
HOME MORTGAGE SERVICING, INC,
a Delaware Corporation; LAW OFFICES
OF JAMES H. WOODALL PLLC, a Utah
LLC; James H. Woodall, a Utah resident.
and
John Does 1-99.
　　　　Defendants

| | |
|---|---|
| ) | Case No. _____ |
| ) | |
| ) | **VERIFIED COMPLAINT AND** |
| ) | **AFFIDAVIT** |
| ) | |
| ) | District Court Judge _____ |
| ) | |
| ) | **TRIAL BY JURY DEMANDED** |
| ) | |
| ) | Case: 2:14cv00544 |
| = | Assigned To : Waddoups, Clark |
| | Assign. Date : 7/25/2014 |
| | Description: Burrows et al v. |
| | Loanleaders of America et al |

　　　　Comes now Affiants/Plaintiffs to Complain and to seek redress through this court as to the
following issues by this VERIFIED COMPLAINT BY AFFIDAVIT:

## I. AFFIDAVIT DECLARATIONS

1.)　　　COMES now, Lonn Burrows and Jackie Burrows, Affiants/Plaintiffs, being competent and
capable to testify and over the age of 21 years of age, being duly sworn according to law to tell the
truth to the facts related herein, state that they have firsthand knowledge of the facts stated herein

and believe that these facts to be true and correct to the best of their belief, knowledge and understanding.

2.)    Affiants/Plaintiffs testify that they are Sentient Beings on the land.

3.)    Affiants/Plaintiffs are aware and know that this Affidavit can only be rebutted, point by point by counter Affidavit, subscribed and sworn to under penalty of perjury within twenty (20) business days, date of receipt excluded. *"An affidavit is simply a method of placing evidence of a fact before the court." Brown v. Jorgensen, 2006 UT App 168, 136 P. 3d 1252 (Utah Ct. App. 2006)* and pursuant to the *Legal Encyclopedia 3 Am Jur 2d.*

4.)    Affiants/Plaintiffs are aware and know that Affidavits are insufficient unless they contain allegations that are direct and unequivocal and perjury can be assigned upon them. The chief test of the sufficiency of an affidavit is its ability to serve as a predicate for perjury prosecution. Thus, the general test applied to determine the sufficiency of an affidavit is whether *"if the facts to which the Affiant swears are false, the Affiant may be prosecuted and convicted of perjury."* ***Hall v. Furlong, 77 F.3d 361, 363 (10th Cir. 1996)***, *See also Peterson v. Garmin Int'l Inc., 833 F. Supp. 2d 1299, 2011 U.S. Dist. Lexis 67628 (D. Kan. 2011; Yero v. Gonzales, 236 Fed. Appx. 451, 2007 U.S. App. Lexis 13571 (10th Cir. 2007); Blakely v. USAA. Cas. Ins. Co., 2012 U.S. Dist. Lexis 175396, 2012 WL 6115625 (D. Utah Dec. 10, 2012); 3 Am Jur 2d §20 Sufficiency. P. 404; and 28 U.S.C. § 1746:*

> *a. [w]herever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or **affidavit**, in writing of the person **[36]** making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of **perjury**, and dated, in substantially the following form:*
>
> *(2)    If executed without the United States: "I declare (or certify, verify, or state) under penalty of **perjury** under the laws of the United States of America that the foregoing is true and correct. Executed on (date).*
>
> *i.    (Signature)".*

(3) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of **perjury** that the foregoing is true and correct. Executed on (date).
i. (Signature)".

5.) Affiants/Plaintiffs are aware and know that a statement or declaration that is made under penalty of **perjury** in compliance with *28 U.S.C. § 1746*, "ha[s] the force of an *affidavit or sworn declaration." Hall v. Furlong, 77 F.3d 361, 363 (10th Cir. 1996), See also Peterson v. Garmin Int'l Inc., 833 F. Supp. 2d. 1299, 2011 U.S. Dist. Lexis 67628 (D. Kan. 2011); Yero v. Gonzales, 236 Fed. Appx. 451, 2007 U.S. App. Lexis 13571 (10th Cir. 2007); Blakely v. USAA. Cas. Ins. Co., 2012 U.S. Dist. Lexis 175396, 2012 WL 6115625 (D. Utah Dec. 10, 2012); 3 Am Jur 2d §20 Sufficiency. P. 404.*

6.) Affiants/Plaintiffs are aware and know that *"The courts must accept an Affidavit as true if it is uncontradicted by a counter Affidavit or other evidentiary materials. IF AN AFFIDAVIT IS UNCONTRADICTED, THE REVIEWING COURT MUST ACCEPT ITS CONTENTS AS TRUE. Accordingly, where an opposing party does not deny or controvert facts stated in a movant's Affidavit, the facts may be deemed to be admitted for purposes of court's ruling on such matters." United States v. Avery, 295 F. 3d 1158, 2002. U.S. App. Lexis 13821 (10th Cir. Kan. 2002); United States V. Cooper, 543 F. 3d, 654 F. 3d 1104, 2011 U.S. App. Lexis 16825, 108 A.F.T.R. 2d (RIA) 5825 (10th Cir. Kan. 2011); United States v. Colonne, 360 F.3d 1169, 2004 U.S. App. Lexis 2028 (10th Cir. Utah 2004); Wilson v. Sirmons, 536 F. 3d 1064, 2008 U.S. App. Lexis 16862 (10th Cir. Okla. 2008); Poolaw v. Marcantel, 565 F.3d 721, 2009 U.S. App. Lexis 9483 (10th Cir. N.M. 2009); See 3 Am Jur 2d. § Sufficiency p. 404.*

7.) Affiants/Plaintiffs are aware and know that the Court's, interested third Party's and your silence is your acquiescence. *SEC v. Art Intellect, Inc., 2013 U.S. Dist. Lexis 32132, Fed. Sec. L. Rep. (CCH) P97, 314 (D. Utah Mar 6, 2013); SEC v. Smart, 2011 U.S. Dist. Lexis 61134, 2011 WL 2297639 (D. Utah June 6, 2011); See 3 Am Jur 2d.*

8.) Therefore, Affiants/Plaintiffs are aware and know that any answer to this Complaint must be point by point by counter affidavit of a **fact witness**. Otherwise, an affidavit would be a sham affidavit. Attorneys cannot testify by affidavit or otherwise unless they are a fact witness themselves. Attorneys can only present evidence, not testimony. Statements of counsel in brief or in oral argument are not facts before the court. *Bevan v. Boyce 5703875 4th Judicial Court Ut. (2005), quoting Trinsey v. Pagliaro, D. C. Pa. 1964, 229 F. Supp. 647; 1964 U.S. Dist. LEXIS 7073.*

9.) Affiants/Plaintiffs are aware and know that statements of counsel in brief or in argument (including affidavits signed by attorneys) are not facts before the court and cannot be relied upon by this court. Only testimony by a fact witness or an affidavit by a fact witness can be considered facts before this court. See *United States V. Lovasco (06/09/77) 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752, Gonzales V. Buist. (04/01/12) 224 U.S. 126, 56 L. Ed. 693, 32 S. Ct. 463, Holt V. United States. (10/31/10) 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, and TELEPHONE CASES. Dolbear V. American Bell Telephone Company. Molecular Telephone Company V. American Bell Telephone Company. American Bell Telephone Company V. Molecular Telephone Company. Clay Commercial Telephone Company V. American Bell Telephone Company. People's Telephone Company V. American Bell Telephone Company. Overland Telephone Company V. American Bell Telephone Company. (03/19/88) 126 U.S. 1, 31 L. Ed. 863, 8 S. Ct. 778.*

## II. JURISDICTION AND VENUE

10.) Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 9 above.

11.) Affiants/Plaintiffs are aware and know that this is an action authorized and instituted pursuant to *28 U.S.C. § 1746, Regulation Z, Part 226 and 15 USC §1601 et. Seq. (Fair Debt Collection Practices Act); Title 12 Code of Federal Regulations, Section 226.18 et. Seq.; Title 12 Code of Federal Regulations, Section 226.18 et. Seq.; Title 12 Code of Federal Regulations, Section 226.18 et. Seq.; Article 9 of the UCC articles under the Utah State Statutes; Securities and Exchange Act of 1934; U.S.C.S. Title 12 section 1813(L)(1&2; U.S.C.S. Title 12 section 1813(L)(1&2)); U.S.C.S. Title 12 Section 1831(1)(1; See 18 U.S.C.A. § 1951, UCA Title 76 §6-406(1),(2)$^C$(f)(g)(i); UCA 70A at 3-310 (2* for damages for violation of these Federal Statutes and voidance of a contract based on fraudulent actions together with other common law, Federal and State statutory claims.

12.) Affiants/Plaintiffs are aware and know that pursuant to *28 U.S.C. § 1331*, the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Affiants/Plaintiffs' claims arise under the laws of the United States. This case arises under federal law where the vindication of a right under state law necessarily turns on some construction of federal law. *Franchise tax bd. v. Construction Laborers Vacation Tr., 463 U.S. 1,9 (1983)*. Adjudication of Affiants/Plaintiffs' application requires an analysis and construction of federal law, namely the violations of the *Regulation Z, Part 226 and 15 USC §1601 et. Seq. (Fair Debt Collection Practices Act); Title 12 Code of Federal Regulations, Section 226.18 et. Seq; Title 12 Code of Federal Regulations, Section 226.18 et. Seq.; Title 12 Code of Federal Regulations, Section 226.18 et. Seq; Article 9 of the UCC articles under the Utah State Statute; Securities and Exchange Act of 1934; U.S.C.S. Title 12 section 1813(L)(1&2); U.S.C.S. Title 12 section 1813(L)(1&2; U.S.C.S. Title 12 Section 1831(1)(1); See 18 U.S.C.A. § 1951, UCA Title 76 §6- 406(1),(2)$^C$(f)(g)(i); UCA 70A at 3-310 (2).*

13.) Affiants/Plaintiffs are aware and know that this Court has supplemental jurisdiction over the remaining state law claims because they *"form part of the same case or controversy." 28 USC § 1367(a)*. A state claim is part of the same case or controversy if it shares a "common nucleus of

operative fact" with the federal claim, and if they would normally be tried together. E.g., *Trustees of the Construction Industry & Laborers Health & Welfare Trust v. Desert Valley Landscape Maintenance, Inc., 333 F.3d 923, 925 (9th Cir. 2003)*. The facts related to Affiants/Plaintiffs' state law claims are intertwined with the events underlying the federal allegations under *Regulation Z, Part 226 and 15 USC §1601 et. Seq. (Fair Debt Collection Practices Act); Title 12 Code of Federal Regulations, Section 226.18 et. Seq; Title 12 Code of Federal Regulations, Section 226.18 et. Seq.,; Title 12 Code of Federal Regulations, Section 226.18 et. Seq.; Article 9 of the UCC articles under the Utah State Statutes; Securities and Exchange Act of 1934; U.S.C.S. Title 12 section 1813(L)(1&2; U.S.C.S. Title 12 section 1813(L)(1&2); U.S.C.S. Title 12 Section 1831(1)(1); See 18 U.S.C.A. § 1951, UCA Title 76 §6- 406(1),(2)©(f)(g)(i); UCA 70A at 3-310 (2)* The Court should therefore extend supplemental jurisdiction over all of Affiants/Plaintiffs' state law claims.

14.)    Affiants/Plaintiffs are aware and know that pursuant to *28 U.S.C. 1391 (b)*, venue is proper in this court because a substantial part of the events or omissions giving rise to Affiants/Plaintiffs' claims occurred in the State of Utah, the contracts which are a part of this action were entered into in the State of Utah, and were and are performable in the State of Utah.

15.)    Affiants/Plaintiffs are aware and know that pursuant to *28 U.S.C. 1332 (1)*, the district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states or includes a department of the United States Government. At the time of the commencing of this action, Affiants/Plaintiffs are citizens of the State of Utah and the Defendants are citizens of the State of Utah, State of California, State of Delaware, and State of Florida as enumerated below.


### III. FRCP RULE 8(a) PLEADING FORMAT

16.)    Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 15 above.

17.)    Affiants/Plaintiffs are aware and know that it has already been established above in 1

through 13, that this court has jurisdiction and that the rules for affidavits apply as outlined above.

18.)    Affiants/Plaintiffs are aware and know that a short and plain statement showing the pleader

is entitled to relief is all that is required. *See FRCP Rule 8(a)(2)*

> *"This simplified notice pleading standard relies on liberal discovery rules and
> summary judgment motions to define disputed facts and issues and to dispose of
> unmeritorious claims": Leatherman v. Tarrant Co. Narcotics Intelligence and
> Coordination Unit, 507 U.S. 168—69 (1993).*
> *"Specific facts are not necessary; the statement need only "give the defendant
> fair notice of what the ...claim is and the grounds upon which it rests." Bell
> Atlantic Corp. v. Twombly (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).
> "In addition, when ruling on a Defendant's motion to dismiss, a judge must
> accept as true all of the factual allegations contained in the complaint. (even if
> doubtful in fact)". Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).
> "Twombly called for a "flexible" plausibility standard" which obligates a
> pleader to amplify a claim with some factual allegations ,,,,when needed to
> render the claim plausible.....The court found that petitioner's appeal did not
> present one of "those contexts" requiring amplification." Ashcroft v. Iqbal 129
> S. Ct. 1937 (2009).*

19.)    Affiants/Plaintiffs are aware and know that the main difference between Twombly,

Leatherman, Pardus, and Ashcroft is that Bell Atlantic Corp v. Twombly did not show all the

pertinent facts related to the wrongs claimed in such a manner that it was not clear what each

specific Defendant allegedly did and specifically to show complicity against the Plaintiff. Whereas

in the other cases, the Affiants/Plaintiffs were specific as to the alleged damages perpetrated by

specific Defendants. However, in this present case, Affiants/Plaintiffs have pointed out specific

acts that were allegedly perpetrated by specific Defendants that damaged Affiants/Plaintiffs and is

reiterated in this complaint.

20.)    Affiants/Plaintiffs are aware and know that *"a demand for the relief sought, which may

include relief in the alternative or different types of relief." See FRCP Rule 8(a)(3).* The demands

for relief are in this complaint below.

## IV. PARTIES

21.)    Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in

1 through 20 above.

22.) Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 18.

23.) Affiants/Plaintiffs' property located at 12939 South 4400 West, Riverton, Utah 84096 is the allegedly collateralized property with a legal description of:

> ALL THAT CERTAIN LAND SITUATED IN THE STATE OF UTAH, COUNTY OF SALT LAKE, CITY OF HERRIMAN, DESCRIBED AS FOLLOWS:
>
> BEGINNING AT A POINT WHICH LIES NORTH 89° 30'59" WEST 89.49 FEET AND NORTH 251.29 FEET FROM THE CENTER OF SECTION 31, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SALT LAKE BASE AND MERIDIAN; RUNNING THENCE NORTH 208.71 FEET; THENCE EAST 208.71 FEET; THENCE SOUTH 208.71 FEET; THENCE WEST 208.71 FEET TO THE POINT OF BEGINNING.
>
> SITUATE IN SALT LAKE COUNTY.
>
> TOGETHER WITH RIGHT-OF-WAY OVER AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:
>
> COMMENCING ON THAT CENTERLINE OF 12600 SOUTH AS POINT WHICH LIES 422.24 FEET NORTH 89°13'15" WEST FROM THE NORTH QUARTER CORNER OF SECTION 31, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SALT LAKE BASE AND MERIDIAN; AND RUNNING THENCE SOUTH 687.61 FEET; THENCE SOUTH 58°17' EAST 375.19 FEET; THENCE SOUTH 1757.72 FEET; THENCE NORTH 89°30;59: WEST 40.0 FEET; THENCE NORTH 1735.08 FEET; THENCE NORTH 58°17' WEST 375.19 FEET; THENCE NORTH 710.45 FEET; THENCE SOUTH 89°03'15" EAST 40.0 FEET TO THE POINT OF COMMENCEMENT.
>
> LESS AND EXCEPTING THEREFROM ANY PORTION LYING WITHIN THE BOUNDS OF 12600 SOUTH STREET.
>
> TAX PARCEL NO.: 27-31-209-043-0000-000

24.) Affiants/Plaintiffs testify that they, Lonn Burrows and Jackie Burrows are natural sentient beings who are domiciled in this judicial jurisdiction. Affiants/Plaintiffs are American citizens of the united states of America who are domiciled in the state of UTAH. At all times pertinent herein, Affiants/Plaintiffs have been represented by Defendants as being indebted to Defendant THE LOANLEADERS OF AMERICAN, INC., or another of the Defendants.

25.) Affiants/Plaintiffs have discovered Defendant: THE LOANLEADERS OF AMERICA, INC., is a foreign corporation currently registered in the STATE of CALIFORNIA, doing business within the Jurisdiction of the State of UTAH and within this judicial jurisdiction. At

all times pertinent herein, Defendant alleges to be a "Creditor" (See Exhibit A and B). Defendant

can be served at its corporate offices located at:

> THE LOANLEADERS OF AMERICA, INC.,
> c/o Brian O'Doyle CEO
> 22 EXECUTIVE PARK, SUITE 250
> IRVINE, CALIFORNIA 92614
> Phone 888-834-1988

And/or its registered agent at:

> THE CORPORATION SERVICE COMPANY
> 2180 SOUTH 1300 EAST, SUITE 650
> SALT LAKE CITY, UTAH 84106

26.)    Affiants/Plaintiffs have discovered Defendant: OPTION ONE MORTGAGE

CORPORATION kna SAND CANYON CORPORATION, a foreign corporation currently

registered in the STATE OF CALIFORNIA, doing business within the Jurisdiction of the state of

UTAH and within this judicial jurisdiction. At all times pertinent herein, Defendant alleges to be a

"Creditor". Defendant can be served at its corporate offices located at:

> OPTION ONE MORTGAGE nka SAND CANYON CORPORATION
> C/O. Dale M. Sugimoto, President
> 6591 IRVINE CENTER DRIVE, SUITE 100
> IRVINE, CALIFORNIA  92618
> Phone 949-453-1702

And/or its registered agent:

> CT CORPORATION SYSTEM
> 1108 EAST UNION AVENUE
> MIDVALE, UTAH 84047
> Phone: 801-984-8160

27.)    Affiants/Plaintiffs have discovered Defendant: FIRST AMERICAN TITLE OF UTAH.

was a company registered in the STATE of UTAH, now dissolved within the STATE of UTAH

and within this judicial jurisdiction. At all times pertinent herein, Defendant alleged to be a Title

Company. Defendant can be served at its corporate offices at:

> FIRST AMERICAN TITLE INSURANCE COMPANY

c/o Dennis J. Gilmore, President/CEO
1 FIRST AMERICAN WAY
SANTA ANA, CALIFORNIA 92707
Phone: 800-409-5121

And/or its registered agent at:

THE CORPORATION SERVICE COMPANY
2180 SOUTH 1300 EAST, SUITE 650
SALT LAKE CITY, UTAH 84106

28.)     Affiants/Plaintiffs have discovered Defendant: Martin Fogelman, loan officer for

LOANLEADERS OF AMERICA CORPORATION that handled business within the STATE of

UTAH and within this judicial jurisdiction. At all times pertinent herein, Defendant was the loan

officer for the property that is the object of this transaction. Defendant can be served as agent for

LOANLEADERS OF AMERICA CORPORATION at:

THE LOANLEADERS OF AMERICA, INC.,
Martin Fogelman, loan officer
c/o Brian O'Doyle CEO
22 EXECUTIVE PARK, SUITE 250
IRVINE, CALIFORNIA 92614
Phone 888-834-1988

And/or the registered agent:
THE LOANLEADERS OF AMERICA, INC.,
Martin Fogelman, loan officer
c/o THE CORPORATION SERVICE COMPANY
2180 SOUTH 1300 EAST, SUITE 650
SALT LAKE CITY, UTAH 84106

29.)     Affiants/Plaintiffs have discovered Defendant: WELLS FARGO BANK, NATIONAL

ASSOCIATION is a foreign corporation currently registered in the state of DELAWARE, doing

business within the jurisdiction of the State of UTAH and within this judicial jurisdiction. At all

times pertinent herein, alleges to be a "Creditor". Defendant can be served at its corporate offices

located at:

WELLS FARGO BANK N.A.
c/o John G. Stumpf—President/CEO
464 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94104

Phone: 800-869-3557

And/or its registered agent:
WELLS FARGO BANK N.A.
C/O CORPORATION SERVICE COMPANY
2180 SOUTH 1300 EAST STE. 650
SALT LAKE CITY, UTAH 84106
Phone: 302-636-5400

30.)    Affiants/Plaintiffs have discovered Defendant: OCWEN LOAN SERVICING, LLC fka

HOMEWARD RESIDENTIAL, INC. fka AMERICAN HOME MORTGAGE SERVICING, INC.

is a foreign corporation currently registered in the state of DELAWARE, doing business within the

jurisdiction of the State of UTAH and within this judicial jurisdiction. At all times pertinent herein,

alleges to be a "Creditor". Defendant can be served at its corporate offices located at:

OCWEN LOAN SERVICING, LLC fka HOMEWARD
RESIDENTIAL, INC. fka AMERICAN HOME MORTGAGE
SERVICING, INC
c/o Ronald M. Faris—President/CEO
1661 WORTHINGTON ROAD, SUITE 100
WEST PALM BEACH, FLORIDA 33409
Phone: 800-746-2936

And/or its registered agent:
OCWEN LOAN SERVICING, LLC fka HOMEWARD
RESIDENTIAL, INC. fka AMERICAN HOME MORTGAGE
SERVICING, INC
C/O CORPORATION SERVICE COMPANY
2180 SOUTH 1300 EAST STE. 650
SALT LAKE CITY, UTAH 84106
Phone: 302-636-5400

31.)    Affiants/Plaintiffs have discovered Defendants: James H. Woodall and LAW

OFFICES OF JAMES H. WOODALL PLLC, is a registered UTAH corporation doing business

within the jurisdiction of the STATE of UTAH and within this judicial district and at all times

pertinent herein, Defendant alleges to be an attorney firm that conducts foreclosure sales under the

alleged Deed of Trust over the subject property to this action. Defendant can be served at:

LAW OFFICES OF JAMES H. WOODALL PLLC
and James H. Woodall
10808 RIVER FRONT PARKWAY SUITE 175
SOUTH JORDAN, UTAH 84095

Phone : (801) 254-9450

32.)     Affiants/Plaintiffs have discovered that there are probably Defendants JOHN DOES 1-99
to be added later.

## V. CLAIMS:

### A: FRAUD BY EXTORTION BY SIGNATURE THROUGH UNDUE COERSION AND UNETHICAL CLOSING OF LOAN BY DEFENDANTS

and

### B: USE OF LOAN APPLICATION TO ENRICH ORIGINATOR AND OTHER VIOLATIONS IN THE CLOSING PROCESS FOR AN ALLEGED LOAN

33.)     Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in
1 through 32 above.

34.)     Affiants/Plaintiffs have discovered that when they applied for a loan with
LOANLEADERS OF AMERICA, INC. (LOANLEADERS), the original loan application was
used to secure a deposit from the FEDERAL RESERVE BANK in the amount of $427,500.00
(Four Hundred Twenty-Seven Thousand, Five Hundred US Dollars). The loan application for the
closing was a typed one that was different from the original offer. **See Exhibit A.** However, this
amount was never credited to the account of Affiants/Plaintiffs nor was that amount credited to a
loan to Affiants/Plaintiffs. Furthermore, it has been discovered by Affiants/Plaintiffs that these
funds were transferred via MoneyNet from Affiants/Plaintiffs Accounts associated with their Social
Security Numbers. These funds were converted to the use of the Originating Bank instead. This is a
blatant theft of funds from Affiants/Plaintiffs. Affiants/Plaintiffs have been discriminated against,
damaged, have a claim and seek relief with the assistance of this court for treble damages of
$1,282,500.00 (One Million Two Hundred Eighty-Two Thousand, Five Hundred US Dollars) for
the loss of the use of the funds and discrimination by Defendants LOANLEADERS and FIRST
AMERICAN TITLE INSURANCE COMPANY (FIRST AMERICAN).

35.)     Affiants/Plaintiffs are aware and know

A.) that at *Regulation Z, Part 226 and 15 USC §1601 et. Seq. (Fair Debt Collection Practices Act)* it is required that 3 days prior to the signing of the loan, a COMPLETE SET OF UNSIGNED DOCUMENTS were to have been given to the Affiants/Plaintiffs, by Defendant FIRST AMERICAN, to take home and review. Affiants/Plaintiffs were not given the opportunity to receive a set of the unsigned documents before the closing at all. In fact FIRST AMERICAN, Martin Fogelman--loan officer, and LOANLEADERS were in such a hurry to get the loan documents signed that they insisted on meeting at Affiants/Plaintiffs home "as soon as possible" without allowing Affiants/Plaintiffs to even read through the documents before signing. And there were not explanations as to what was in the documents. We later learned that because of financial difficulties of the holder in due course OPTION ONE MORTGAGE COMPANY (OPTION ONE), there was a rush to get the loan into a certain mortgage backed security pool, thereby violating our rights to become informed as to what was in the documents. **See Exhibit B, Complaint against OPTION ONE by the SECURITIES AND EXCHANGE COMMISION (SEC). See Exhibit C, Promissory Note.**

B.)Martin Fogelman, loan officer for LOANLEADERS, changed the terms of the loan to reflect a 40 year contract instead of the agreed upon 30 year contract. He also changed the contract to include an ARM that was not agreed to. He also changed the contract to include a balloon payment after 30 years, **See Exhibit C** which was not agreed to by the Affiants/Plaintiffs. Martin Fogelman also knew or should have known that the documents **See Exhibit C and See Exhibit D, Deed of Trust** were all dated one day before being signed by Affiants/Plaintiffs. FIRST AMERICAN and LOANLEADERS arranged for the documents to be transferred to Defendant OPTION ONE MORTGAGE kna SAND CANYON CORPORATION on February 7, 2007, when the documents were actually signed on February 8, 2007. **See Exhibit E, Assignment of Deed of Trust. See Exhibit F, Corporate Assignment of Deed of Trust.** Thus making it a fraudulent transfer in violation of the National *Securities and Exchange Act of 1934* as amended, and a null and void transaction.

C.) This has resulted in a claim for damages, as the Affiants/Plaintiffs relied on the Defendant FIRST AMERICAN and was not afforded the ability to properly assess the true nature of the transaction or, if needed, to consult an attorney before the pressures of the signing at closing. This is a discriminatory act against the Affiants/Plaintiffs to be afforded the opportunity to make proper decisions concerning the loan transaction. Affiants/Plaintiffs have been damaged, have a claim, and are seeking remedy with the assistance of this court of $550,000.00 (Five Hundred Fifty Thousand US Dollars).

36.)    Affiants/Plaintiffs have discovered that at *Title 12 Code of Federal Regulations, Section 226.18 et. Seq.* the settlement statement, **See Exhibit G,** is required to include the stated interest rate on that statement. The interest rate was not stated on the settlement statement as presented by Defendant FIRST AMERICAN. Therefore, Affiants/Plaintiffs have again been discriminated against, have been damaged, have a claim and seek remedy with the assistance of this court in the amount of $1,000.00 (One Thousand US Dollars). Additionally, after having an accountant review the Settlement Statement, the amount owed by Affiants/Plaintiffs comes to zero. Further evidence that Affiants/Plaintiffs did not receive a loan from LOANLEADERS.

37.)    Affiants/Plaintiffs have discovered that at *Title 12 Code of Federal Regulations, Section 226.18 et. Seq.,* Defendant FIRST AMERICAN is required to provide to the borrower a complete copy of the Promissory Note and the Deed of Trust signed by the **lender** and the borrower within 2 to 3 days after the closing. Affiants/Plaintiffs have never received a complete copy of the Promissory Note and the Deed of Trust signed by the Lender and the Borrower. Further the Note and Deed of Trust are required to have proper OMB numbers on the documents. These were not provided by the Lender or Lender's agents. Affiants/Plaintiffs have been discriminated against and deprived of their rights to have these important signed documents presented to them, with proper OMB numbers on the forms and in a timely manner. The Affiants/Plaintiffs have a claim for damages and seeks remedy of $6,000.00 (Six Thousand US Dollars) with assistance from this court.

38.) Affiants/Plaintiffs have discovered that at *Article 9 of the UCC articles under the Utah State Statutes,* it is required that the lender acquires a UCC-1 lien on the property and that the borrower sign papers acknowledging receipt of notice of the UCC-1 lien. Defendants LOANLEADERS and FIRST AMERICAN discriminatorily failed to acquire the UCC-1 lien and failed to provide papers for the borrower to sign acknowledging receipt of said notice of the UCC-1 lien. Affiants/Plaintiffs have a claim for damages for the discriminatory lack of this documentation from the Defendants LOANLEADERS and FIRST AMERICAN and seek remedy for these damages of $4,000.00 (Four Thousand US Dollars) with assistance from this court.

## V. CLAIMS:

## C. ORIGINATION OF THE LOAN BY CONVERSION

39.) Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 38 above.

40.) Affiants/Plaintiffs have discovered that within the loan closing documents should be a required document called "Important Information About Procedures For Opening a New Account". This document states "To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account." This is a document used to open a bank account.

41.) As Affiants/Plaintiffs researched they found that *U.S.C.S. Title 12 section 1813(L)(1&2)* authorizes a bank to deposit a Promissory Note into an account as a cash item. LOANLEADERS used the Promissory Note as a deposit in the Affiants/Plaintiffs newly created account. The *Federal Reserve Bank's own publications* admit that their member banks create money, in this manner, when loaning money. However, *U.S.C.S. Title 12 section 1813(L)(1&2)* states that the depositor's money cannot be lent without the depositor's written permission. The Lender did not, at any time, acquire written permission from the Borrower/depositor to lend their Promissory Note, which was deposited into a bank account, to anyone, including the Borrowers/Depositors. These three bits of

information show that the lender (LOANLEADER) is depositing the Borrowers/Depositor's Promissory Note to fund the alleged loan and without the written permission of the Borrower/Depositor. This is a blatant violation of the law. It is theft by conversion of Affiants/Plaintiffs Promissory Note as money equivalent. In fact, Affiants/Plaintiffs, as the Borrowers/Depositors, did not know of this scheme for several years.

42.)      Affiants/Plaintiffs declare that they did not receive and that there was never any proof of a bona fide loan received. The source of funds have always been in question.

> *A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed. Black's Law 7th edition.*

43.)      Affiants/Plaintiffs discovered there was never actual money received by Affiants/Plaintiffs in the origination transaction. In fact, the first line of the Promissory Note states that "in exchange for a loan that I have received, I agree to pay $427,500.00 (Four Hundred Twenty-Seven Thousand, Five Hundred US Dollars) with interest." **See Exhibit C**. It turns out that Affiants/Plaintiffs did not receive that loan of money. Therefore, Affiants/Plaintiffs have been damaged for lack of proper consideration in the transaction.

44.)      Affiants/Plaintiffs were led to believe that funds came from an origination account populated with bank funds. However Affiants/Plaintiffs came to understand and now know that the Promissory note, as a money equivalent, was used to open an origination account in Affiants/Plaintiffs names. From **that** account, Defendant LOANLEADERS sent a wire transfer to FIRST AMERICAN that was used instead of money from the Originator's funds to be loaned to Affiants/Plaintiffs. But the funds were indeed generated from depositing the Promissory Note as a money equivalent. No bank funds were used for the alleged loan.

> *As used in this chapter-*
> *The term "deposit" means-*
> *(1) the unpaid **balance of money or its equivalent received or held by a bank** or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by its certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or*

> other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a traveler's check on which the bank or savings association is primarily liable: Provided, That, **without limiting the generality of the term "money or its equivalent", any such account or instrument must be regarded as evidencing the receipt of the equivalent of money** when credited or issued in exchange for checks or drafts or **for a promissory note** upon which the person obtaining any such credit or instrument is primarily or secondarily liable, or for a charge against a deposit account, or **in settlement of checks, drafts, or other instruments forwarded to such bank or savings association for collection.** 12 USC § 1831(l)(1).

45.)    Affiants/Plaintiffs know and understand how this situation creates conversion of funds. The elements of conversion are: 1.) that the Affiants/Plaintiffs **own or has the right to possess the personal property** in question at the time of the interference; 2.) that the Defendants **intentionally interfered with** the Affiants'/Plaintiffs' personal property by exercising "dominion and control" over it; 3.) Third, that the interference **deprived the Affiants/Plaintiffs of possession or use** of the personal property in question; and 4.) that the interference **caused damages** to the Affiants/Plaintiffs. *Harper & Row Pubs. v. Nation Enters., 723 F.2d 195, 201 (2nd Cir. 1983).*

46.)    Affiants/Plaintiffs have the right to own and possess their personal property known as the Promissory Note until such time as it has been properly paid for by the Defendant, LOANLEADERS or some other lender. All of the other Defendants knew or should have known of this conversion scheme as they were basically receiving or causing to receive stolen property by conversion. Affiants/Plaintiffs have been discriminated against, have been damaged, have a claim, and seeks remedy with the assistance of this court of the amount of the note at treble damages of $1,282,500.00 (One Million, Two Hundred Eighty Two Thousand, Five Hundred US Dollars).

47.)    Affiants/Plaintiffs know that Defendant LOANLEADERS intentionally interfered with the Promissory Note by taking possession of it, exercising dominion and control over it, to convert it to

their own uses and designs without giving any consideration for the Promissory Note. They abused their power as a financial institution to divert the Promissory Note to an account where the Promissory Note was treated as a money equivalent for the purpose of pretending that it was their consideration for a loan.

48.)     Affiants/Plaintiffs were deprived of the Promissory Note so they could not use the Promissory Note to obtain a proper loan.

49.)     Affiants/Plaintiffs are aware and know that the elements of extortion are a wrongful use of force or **fear**, with the specific intent of inducing the victim to consent to the Defendant's obtaining his property, being the **Promissory Note and Deed of Trust** in this case, which does not in fact induce such consent and **results in the Defendants obtaining the property from the victims, Affiants/Plaintiffs**. *See 18 U.S.C.A. § 1951, UCA Title 76 §6- 406(1),(2) C(f)(g)(i),State v Prince 75 Utah 205 (1930), US v. Carbahal-Hernandez 636 F. Supp 2d 1196 (2009),US v. Hall 536 F 2d 313(1976).*

50.)     Affiants/Plaintiffs testify that they experienced fear and apprehension in the closing process and in discovering the true nature of the transaction. They feel extorted out of their property.

51.)     Affiants/Plaintiffs testify that there has been a breach of contract in that they did not receive a loan as promised and they were tricked into believing that they had received a loan.

52.)     Affiants/Plaintiffs have come to understand that this scheme has caused them and others damages. This scheme has the same effect as counterfeiting, as it creates new money into the system. Thereby it weakens the economy and does damage to the general welfare of the people creating a Constitutional Crisis, if it were to be done on a large scale. It also unjustly enriches a class of people known as the Bank. To be a part of this scheme has damaged Affiants/Plaintiffs

financial integrity and created mistrust of the Defendants. It has also created a situation where Affiants/Plaintiffs are unwittingly a party to this scheme of Conversion without proper Consideration in the transaction, Extortion, and Breach of contract.

53.) Additionally, since Affiants/Plaintiff's Note was taken for the obligation without just compensation/consideration the entire loan/obligation is suspended and satisfied.

> "**if a note** or an uncertified check is taken for an obligation, the obligation is suspended to the same extent **the obligation would be discharged if an amount of money equal to the amount of the instrument were taken,** and the following rules apply: (a) in the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified." UCA 70A § 3-310(2).

54.) Affiants/Plaintiffs request treble the amount of the note in damages of $1,282,500.00 for conversion, use of our Promissory Note for gain and concealing the true nature of the transaction with the Promissory Note (as noted above), extortion, and breach of contract.

55.) Therefore, the Lender LOANLEADERS did not give any money to the Borrower (Affiants/Plaintiffs) for the Promissory Note as promised in the Promissory Note (see first paragraph of Promissory Note). The refinance was paid out of the account created for deposit of the Promissory Note. The loan originator provided no funds. The only "asset" to this transaction was the Promissory Note delivered by Affiants/Plaintiffs to Defendant LOANLEADERS. Upon receipt of the Affiants/Plaintiffs Promissory Note, Defendant LOANLEADERS deposited the same into an account and, in line with generally accepted accounting principles, Defendant LOANLEADERS opened an offsetting liability account as a loan from Affiants/Plaintiffs to Defendant LOANLEADERS in the same amount. This was done without the knowledge of Affiants/Plaintiffs and was never disclosed to Affiants/Plaintiffs by Defendant LOANLEADERS. At all times relevant to these transactions, Affiants/Plaintiffs had reason to believe and did believe that Defendant LOANLEADERS was "at risk" and the contract had valid consideration on the part of

Defendant when in fact, Defendant had no risk and had parted with no consideration at all. Defendant LOANLEADERS, in a fraudulent manner, concealed this information from Affiants/Plaintiffs and fraudulently induced Affiants/Plaintiffs to enter into this contract by such concealment. This action constitutes a Material breach of contract. Therefore, the Lender LOANLEADERS is lending the Affiants/Plaintiffs/Borrower's own credit to Affiants/Plaintiffs/the Borrower. This creates a situation where the Lender LOANLEADERS gave no consideration for the contract. Yet, the Lender has had the benefit of the Promissory Note and the Deed of Trust since the date of the note. Therefore, Affiants/Plaintiffs request the return of all funds (to be determined after a fund accounting) forwarded to any of the Defendants in this case by the Affiants/Plaintiffs or other transactions leading to compensation to any of the Defendants.

56.)     Affiants/Plaintiffs have discovered that the Lender's (LOANLEADERS) Charter forbids them to lend credit, only money. Thus making the promissory note (along with the Deed of Trust), an ultra vires contract, which has been declared by the courts as void ab initio for the lender operating outside of their Charter. Affiants/Plaintiffs have a claim for damages in this illegal scheme of breach of contract and using Affiants/Plaintiffs to violate the Defendant's own charter. Affiants/Plaintiffs are incensed that, without their knowledge, they have been involved in such an illegal activity by Defendant LOANLEADERS. Therefore, remedy for damages is voiding the Promissory Note along with the Deed of Trust and issuing a Deed of Reconveyance for the Property in favor of the Affiants/Plaintiffs, fees of $1,000,000.00 (One Million US Dollars) and any other remedies deemed appropriate by this court on this matter.

## V. CLAIMS:

## D: SECURITIZATION OF THE ALLEGED LOAN

57.) Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 56 above.

58.) Affiants/Plaintiffs testify that they were never informed that their Promissory Note was going to be altered like a check and sold into the mortgage-backed security pools. There was not full disclosure of the nature of the transaction. However, when it was sold into the Mortgage Backed Security Pools, the funds received from the sale were never properly accredited to Affiants'/Plaintiffs' account. Remember, the originating bank never paid for the privilege of keeping the funds from such a sale. THERE WAS NO LOAN from the originator. Therefore any funds received from the sale of the Promissory Note, Deed of Trust or from the mortgage backed security pools should be credited to Affiants/Plaintiffs.

59.) Affiants/Plaintiffs believe there should be a full tier one, two and three accounting made of the Deed of Trust investment Trust account and all sales/transfers of the Promissory Note and Deed of Trust.

60.) Affiants/Plaintiffs are aware and know that the transfers and securitizations were done by LOANLEADERS, OPTION ONE MORTGAGE CO. kna SAND CANYON CORPORATION, OCWEN FINANCIAL CORPORATION fka HOMEWARD RESIDENTIAL, INC. fka AMERICAN HOME MORTGAGE SERVICING, INC and WELLS FARGO BANK N.A., THE LAW OFFICES OF JAMES H WOODALL PLLC, and James H. Woodall. All of these entities knew or should have known of the fraudulent conversion and the subsequent transactions that occurred. They are all culpable in these matters.

61.) Affiants/Plaintiffs are aware and know that all the funds received in the securitization process, rightfully belong to Affiants/Plaintiffs and should be immediately returned to Affiants/Plaintiffs. Affiants/Plaintiffs have been damaged by the loss of these properties, and have a claim, and seek remedy of all funds discovered in the accounting, and $500,000.00 (Five Hundred Thousand US Dollars) for loss of use of these funds. Affiants/Plaintiffs seek the assistance of the court for these remedies.

## V. CLAIMS:

## E:  BACKGROUND AND EVENTS LEADING UP TO THE ATTEMPTED FORECLOSURE SALE OF THE AFORESAID PROPERTY

57.)    Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 61 above.

58.)    Affiants/Plaintiffs are aware and know that Defendant LAW OFFICES OF JAMES H. WOODALL PLLC and James H. Woodall caused to be recorded at the SALT LAKE COUNTY RECORDER'S OFFICE a document titled "SUBSTITUTION OF TRUSTEE" on November 14, 2011 and was signed on November 7th, 2011. **See Exhibit H.** This document states that Defendant James H. Woodall has been appointed Successor Trustee under the Deed of Trust, Promissory Note, and all related to such, that were executed by Lonn and Jackie Burrows.

59.)    Affiants/Plaintiffs are aware and know that this "SUBSTITUTION OF TRUSTEE" states that the WELLS FARGO BANK, N.A., TRUSTEE FOR THE SOUNDVIEW HOME LOAN TRUST 2007-OPT1, ASSET-BACKED CERTIFICATES, SERIES 2007-OPT1 is the Beneficiary. The document alleges that WELLS FARGO BANK, N.A. is the trustee of the trust as noted. Note how the Asset-backed Certificates, Series 2007-opt1 are almost 5 years old at this point in time. It took them almost 5 years to record at the SALT LAKE COUNTY RECORDER'S OFFICE that a change of ownership has occurred. **See Exhibit I.** This violates security laws and the laws of the State of Utah for recording the beneficiary of the Deed of Trust at the SALT LAKE COUNTY RECORDER'S OFFICE. Affiants/Plaintiffs also noticed that these documents didn't show up until extorted mortgage payments got behind.

60.)    Affiants/Plaintiffs are aware and know that the "Substitution of Trustee" document was signed by one April King who is a known rob signer. **See Exhibit H and J.** So how does someone who signs in the same day as an asst. secretary for one mortgage bank/company and then a vice president for another mortgage bank/company and as an attorney in fact actually have any validity at all? There are no corporate resolutions presented for this kind of activity either.

61.)     Affiants/Plaintiffs are aware and know that the "Substitution of Trustee" document is a forgery and a nullity. Since all of the other documents for foreclosure are based upon this "Substitution of Trustee," then all of the subsequent documents filed at the SALT LAKE COUNTY RECORDER'S OFFICE by THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall himself, are of no effect for effecting a legal foreclosure and are a nullity. THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall can't present any evidence of standing to sell the property in a foreclosure sale. Therefore all of their mailings, postings, and pleadings are violations of the state's communications fraud statutes. And where is the evidence of a contract between THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall with any of the other of the Defendants? Where does THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall get their authority? This feels like identity theft on steroids.

62.)     Affiants/Plaintiffs could find no evidence of, and now believe none exists, of any resignation of Defendant FIRST AMERICAN as the Trustee of the Deed of Trust to make room for Defendant THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall to take over as Trustee. Also, Affiants/Plaintiffs could not find, and therefore believe none exists, real contractual evidence of Defendants THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall having been appointed to be a substitute Trustee to file a **"NOTICE OF DEFAULT AND ELECTION TO SELL.". See Exhibit K and L.**

63.)     Affiants/Plaintiffs testify that they have listed numerous violations of Utah State Statutes by THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall in presentments that were filed at the SALT LAKE COUNTY RECORDERS OFFICE and subsequently and immediately served upon THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall and the other Defendants, except Martin Fogelman, as a presentment for their comment and rebuttal. These documents were in a form of affidavit by Affiants/Plaintiffs and as a result of the issues discovered for this complaint. A reply was requested within the documents. The

documents are "NOTICE OF SEVERANCE", see Exhibit M, "VERIFIED MEMORANDUM OF LAW", see Exhibit N, "NOTICE OF RESCISSION AT LAW OF SIGNATURE FROM DEED OF TRUST", see Exhibit O, "AFFIDAVIT OF JACKIE BURROWS'S REQUEST FOR TRUTH IN LENDING ACT MORTGAGE TRANSFER DISCLOSURES", and see Exhibit P. None of these documents were replied to and should now be considered as truth. These documents were filed on May 23, 2014 and all delivered within a week of filed to the Defendants as noted above.

64.) Affiants/Plaintiffs have been damaged by these forged, illegal documents. In spite of all the above, the Defendants THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall are still proceeding on the path to a foreclosure sale that is blatantly illegal. Affiants/Plaintiffs request a stay to the foreclosure sale for cause. Affiants/Plaintiffs believe that Defendants THE LAW OFFICES OF JAMES H. WOODALL PLLC or James H. Woodall need some refresher courses in SEC statutes, rules and regulations; proper evidence for the taking of property, forgery, and some accounting classes to assess the true nature of the attempted takings of real property. Affiants/Plaintiffs are being damaged by their illegal acts and have a claim, and request this court grant relief of $1,500,000.00. (One Million, Five Hundred Thousand Us Dollars).

## V. CLAIMS:

### F COMPLAINT TO ESTABLISH STANDING OF CREDITORS (PLAINTIFF / COUNTER-DEFENDANTS) WITH DECLARATORY JUDGMENT

65.) Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 64 above.

66.) Affiants/Plaintiffs are aware and know that Defendants have been unable to prove standing to foreclosure due to the creation of questionable and forged documents by Defendants and as a result an illegal foreclosure sale is about to occurred. Additionally, the original Promissory Note, transfer proof / documentation, and original Deed of Trust has not been presented to clear up who has standing.

67.) Affiants/Plaintiffs are aware and know that Defendant WELLS FARGO BANK N.A.
TRUSTEE has not established that it is a "party in interest' or a "creditor" entitled to have a claim
as a creditor. Defendants must first establish status as creditors in order to FORECLOSE See
*Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255- 1265 (10th Cir. 2012).*
Defendants have not presented any credible evidence of standing as creditors to Affiants/Plaintiffs
and must bear the burden of proving their statutory standing as parties in interest. See *Miller v.
Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255, 126, 1261,1262 (10th Cir. 2012)*
(citing *Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.), 698 F.2d 571, 573 (2d
Cir. 1983).*

68.) Affiants/Plaintiffs know and are aware that a creditor includes an entity that has a claim
against the debtor and has a right to payment. See e.g. *Miller v. Deutsche Bank Nat'l Trust Co. (In
re Miller), 666 F.3d 1255, 1261 (10th Cir. 2012)(quoting 11 U.S.C. § 101(10)(a) and quoting 11
U.S.C. § 101(5)(A).*

69.) Affiants/Plaintiffs are aware and know that Defendants failed with their presented
documents to show a right to any payments under the Note and therefore failed to have a right to
foreclose under the Deed of Trust.

70.) Affiants/Plaintiffs are aware and know that *"Within the context of a ... proceeding, state
law governs the determination of property rights in the context of a ... proceeding"* See *Miller v.
Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255, 1262(10th Cir. 2012) (quoting In re
Mims, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010.*

71.) Affiants/Plaintiffs are aware and know that under Utah law, and more particularly
under Utah's version of the Uniform Commercial Code, a promise or order such as the Promissory
Note is *"payable to order if it is payable to the order of an identified person, or to an identified
person or order." "UCA § 70A-3-109(2) (1953 as amended)."*

72.) Affiants/Plaintiffs are aware and know that, producing the original Promissory Note should clear up who actually owns the note, rather than relying on questionable created documents that are proven unreliable.

73.) Bear in mind, Affiants/Plaintiffs are aware and know that a mere photo copy of the Promissory Note showing an unindorsed Note or Note showing a blank indorsement is not sufficient proof to establish who the successor holders of the Note are. See *"UCA § 70A-3-205(2) (1953 as amended)."*

74.) Affiants/Plaintiffs are aware and know that instead, Utah law requires "negotiation" of the Note, or in other words, *"transfer of Possession... to a person who thereby becomes its holder." "UCA § 70A-3-201(1) (1953 as amended)."* There is no clear transfer of Possession in this case due to the questionable and forged documents.

75.) **And** Affiants/Plaintiffs are aware and know that Utah law provides that *"if an instrument is payable to an identified party,* [such as Defendants in this case], *negotiation requires transfer of possession of the instrument and its indorsement by the holder."* "UCA § 70A-3-201(2) (1953 as amended)."

76.) Affiants/Plaintiffs are aware and know that the official Comment relating to *"UCA § 70A-3-201(1)"* explains that *"negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent." "UCA § 70A-3-201(1) cmt.no.1."*

77.) Affiants/Plaintiffs are aware and know that Defendants have not demonstrated, and cannot demonstrate, that Defendants have in fact obtained physical possession of the original Note, which would thereby prove they are the current holder of the Note under Utah law.'

78.) Affiants/Plaintiffs are aware and know that Defendants may not enforce the Promissory Note as a "transferee" pursuant to *"UCA § 70A-3-203"* because "transfer" requires "delivery" of the Note. *"an instrument is transferred when it is delivered by a party other than the*

*issuer for the purpose of giving the party receiving delivery the right to enforce the instrument."* "*UCA § 70A-3-203(1)*". **Also see** *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255-1265 (10th Cir. 2012).*

79)     Affiants/Plaintiffs are aware and know that as a consequence, have not demonstrated, and indeed cannot demonstrate, that they have taken actual physical "delivery", defined by Utah law as "*voluntary transfer of possession,*" of the original Note, and therefore cannot enforce the Note as a transferee. "*UCA § 70A-1a-201(o)."*

80.)     Affiants/Plaintiffs are aware and know that Defendants are not a "party in interest" ... and its foreclosure activities against Affiants/Plaintiffs are, therefore, unlawful, wrongful, void, unlawful and improper.

81.)     Affiants/Plaintiffs are aware and know that because Defendants are not real parties in interest, holders, or transferees of the Note, Defendants are not "creditors" of Affiants/Plaintiff's …and therefore are not entitled to … perform a foreclosure sale that would be void ab initio.

82.)     Affiants/Plaintiffs are aware and know that Defendants are not real parties in interest, holders or transferees of the Promissory Note, and therefore lack authority to foreclose upon Affiants/Plaintiff's property. The court can resolve this issue by requiring the original Promissory Note, Original Deed of Trust, and supporting transfer documents to prove standing according to *UCA § 708B-6-401* **and** *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller), 666 F.3d 1255-1265(10th Cir. 2012).*

83.)     As a result of the above, Affiants/Plaintiffs have been damaged and requests a declaratory judgment that Defendants are not Holders In Due Course, and that the foreclosure sale be stayed with injunctive relief.

## V. CLAIMS:

## G. COMPLAINT TO THE FRAUDULENT BEHAVIOR DURING THE ATTEMPTED REMODIFICATION

84.)     Affiants/Plaintiffs restate, reaffirm, and incorporate all of Affiants/Plaintiffs testimonies in 1 through 83 above.

85.)      Affiants/Plaintiffs are responsible citizens and do their best to take care of their obligations.

86.)     Defendants OCWEN assured Affiants/Plaintiffs that they would modify the loan and put the payments Affiants/Plaintiffs were behind on at the end of the loan to reduce the stress they were under.

87.)     Defendant OCWEN told Affiants/Plaintiffs to not make any more payments until the modification was completed.

88.)     After several months and sending a lot of personal information numerous times, Affiants/Plaintiffs were told that Defendant OCWEN was not going to modify the loan.

89.)     Affiants/Plaintiffs took out a bankruptcy to try and save the home, at which time Defendant OCWEN reiterated that they could do a modification. After several more months and several more tries, it became apparent that a modification was not going to come through.

90.)     Affiants/Plaintiffs studied the mortgage industry and found several inconsistencies in their alleged mortgage loan and documents.

91.)     Affiants/Plaintiffs have experienced devastating deceptive practices in the modification programs of the Defendants. The Defendants would get your hopes up and then dash them slowly over time. Then the Defendants would go for a foreclosure anyway.

92.)     Affiants/Plaintiffs have been discriminated against and damaged by this modification ruse, Affiants/Plaintiffs now have a claim and seek remedy from this court of $500,000.00 (Five Hundred Thousand US Dollars.)

### REQUESTS FOR RELIEF WITH ASSISTANCE OF THIS COURT

Affiants/Plaintiffs testify that the following are their requests for relief:

| A. For theft of funds associated with MoneyNet transfer | $1,282,500.00 |
| B. Violation of Reg Z and changing terms of contract w/o consent | $550,000.00 |

| | |
|---|---|
| C. CFR, Title 12 violations | $11,000.00 |
| D. Conversion, Extortion and Breach of Contract | $1,282,500.00 |
| E. Breach of LOANLEADERS Charter | $1,000,000.00 |
| | Void Promissory Note |
| | Deed of Reconveyance in favor of Affiants/Plaintiffs |
| F. Illegal Securitization | $500,000.00 |
| | Transfer of all funds made in investment trust accounts |
| G. Illegal Acts by foreclosure attorney and his firm | $1,500,000.00 |
| H. Fraud during attempted remodification of loan | $500,000.00 |
| I. Legal Costs and Research | $15,000.00 |

Totals:                                             $6,641,000.00 + above undetermined

Further Affiants/Plaintiffs sayeth naught.

Respectfully submitted this ___ day of July, 2014.

_____

Affiant/Plaintiff Lonn Burrows

State of Utah                    )
                                 Ss
County of _____              )

Subscribed and sworn to before me on this ___ day of July, in the year 2014, by Lonn Burrows. Witness my hand and official seal.

_____

Notary Public

Seal:

_____

Affiant/Plaintiff Jackie Burrows

State of Utah                    )
                                 Ss
County of _____              )

Subscribed and sworn to before me on this ___ day of July, in the year 2014, by Jackie Burrows. Witness my hand and official seal.


_____
Notary Public

Seal:

87.) Affiants/Plaintiffs studied the mortgage industry and found several inconsistencies in their alleged mortgage loan and documents.

88.) Affiants/Plaintiffs have experienced devastating deceptive practices in the modification programs of the Defendants. The Defendants would get your hopes up and then dash them slowly over time. Then the Defendants would go for a foreclosure anyway.

76.) Affiants/Plaintiffs have been discriminated against and damaged by this modification ruse, Affiants/Plaintiffs now have a claim and seek remedy from this court of $500,000.00 (Five Hundred Thousand US Dollars.)

Further Affiants/Plaintiffs sayeth naught.

Respectfully submitted this 24 day of July, 2014.

Affiant/Plaintiff Lonn Burrows

State of Utah            )
                          ss
County of Washington )

Subscribed and sworn to before me on this 24 day of July, in the year 2014, by Lonn Burrows. Witness my hand and official seal.

Notary Public

NOTARY PUBLIC
DAVID UNDERWOOD
669401
COMMISSION EXPIRES
AUGUST 26, 2017
STATE OF UTAH

_____

Affiant/Plaintiff Jackie Burrows

State of Utah )
) Ss
County of *Washington* )

Subscribed and sworn to before me on this 2*4* day of July, in the year 2014, by Jackie Burrows. Witness my hand and official seal.

_____
Notary Public

NOTARY PUBLIC
DAVID UNDERWOOD
669401
COMMISSION EXPIRES
AUGUST 28, 2017
STATE OF UTAH